IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTIE DOUCETT,

        Plaintiff,

    vs.                                   CIVIL NO.  08-826 CG/LFG

D.R. HORTON, INC.,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff Christie Doucett's ("Doucett") Motion to Compel [Doc. 48].  The Court considered the motion, the response in opposition with exhibits [Doc. 62], Affidavits [Docs. 63, 64], and the reply [Doc. 73].  Oral argument is not necessary.  Based on the Court's review of the pertinent law and submissions, it grants Doucett's motion in part and denies it in part.

### <u>Duty to Confer in Good Faith Before Filing Motion</u>

The Federal Rules of Civil Procedure impose a duty to confer in good faith before filing a discovery motion.  Fed. R. Civ. P. 37(2)(A) (requiring that a motion to compel include a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosures so as to avoid requiring court action).

On May 22, 2009, Doucett sent a single e-mail to opposing counsel, setting forth counsel's concerns with Defendant D.R. Horton, Inc.'s ("Horton") responses to discovery requests.  Counsel for Doucett stated that its deadline to file a motion to compel was June 2, 2009, and requested that Horton reply to the email with the requested information on or before May 28, 2008, so that Doucett could avoid filing a motion to compel. [Doc. 48, Ex. 2.]

On May 27, 2009, Horton responded to the email, advising that the discovery requests in question (*see* discussion *infra* relating to specific requests) were overly broad and would include:

> among other things, a wide variety of documents that have no relevance to the case and which would be overly broad and burdensome to obtain, and would include, without limitation, documents such as all purchase agreements with every homeowner who obtained options from Ms. Doucett over the time that Ms. Doucett was employed, all paperwork and every computerized form that Ms. Doucett filled out to complete the homeowner's request for options, all the paperwork relating to the specs, any e-mails to or from Ms. Doucett regarding anything work related.

[Doc. 62, Ex. A.]

Horton noted that it already produced all documents reflecting any matters pertaining to Ms. Doucett's performance and the performance of the other consultants and documents regarding the layoff.  Horton also indicated it provided all non-privileged documents and was pleased to provide a privilege log encompassing documents up to filing of the lawsuit.

Finally, regarding the request for information about the termination of all pregnant employees and all employees who elected to exercise their right to leave under the FMLA, Horton asserted that it appeared that Doucett was requesting information from Horton's divisions in 28 different states, not just New Mexico.  Thus, Horton argued that the request was overly broad and burdensome because Horton's other divisions do involve the decision maker or decision makers in this case, and have no bearing on the facts in this case. [Id.]

Doucett did not respond to Horton's May 27th letter or offer to responses to narrower requests for information, and instead, filed the present Motion to Compel.  Doucett's efforts to resolve the dispute in this case are akin to the situation in Hoelzel v. First Select Corp., 214 F.R.D. 634 (D. Colo. 2003).  In that case, the court noted that a single e-mail stating that the plaintiff intended to file a motion to compel based on the defendant's refusal to respond to discovery requests

was insufficient to satisfy the requirement that parties make reasonable good-faith efforts to confer in an attempt to resolve a disputed matter.  The court noted, "To confer means more than making a demand for compliance; it means 'to hold a conference; compare views; consult together.'" Id., at 636.

In this case, it appears clear that had the parties continued their efforts to resolve the dispute, this motion practice could have been avoided.  While the Court will consider the motion on the merits, it reminds the parties that the good-faith conference contemplated by Rule 37(2)(A) requires a meaningful attempt to resolve the dispute before the motion is filed.  Here, Doucett should have responded to Horton's May 27, 2009 letter in an attempt to narrow the issues and, if appropriate, to reach an accommodation.

## **Pertinent Legal Standard**

Rule 26 is pertinent to determining Doucett's Motion to Compel.  The Rule allows the Court to limit a discovery request under principles of proportionality.  The Rule specifically provides that:

> [t]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  Thus, under Rule 26, a court is required to limit discovery under certain circumstances.  This limitation is consistent with the Court's obligation to strike a balance between Doucett's need for information and the burdens imposed on Horton in providing what is sought.  *See*

Koch v. Koch, Indus., 203 F.3d 1202, 1238 (10th Cir. 2000); Burka v. U.S. Dep't of HHS, 87 F.3d 508, 517 (D.C. Cir. 1996).

**Request for Production No. 13**

In Request for Production No. 13, Doucett asked Horton to produce:

> All documents, including but not limited to all emails, notes, correspondence and memos, which refer, reflect or relate to Christie Doucett, the termination of Christie Doucett, or the termination of pregnant employees or employees who have elected to exercise their right to leave under the FMLA.

In essence, Doucett asks for every document Horton created that mentions Doucett's name. As already noted in Horton's May 27th letter, the request would generate documents that have nothing to do with this lawsuit, i.e., purchase contracts in which Doucett participated as a designer; customer options lists; correspondence; and, countless other agreements that have no bearing on this lawsuit.

In addition, Doucett seeks information that covers a 28-state area. Horton presented evidence indicating that management of its operations was based on local decision making. Although it may have had a unified HR department, Horton's decisions on hiring, firing, and day-to-day management were local matters. Moreover, Horton provided sworn testimony concerning the significant burdens and costs associated with conducting a manual search to obtain the requested information. The Court concludes that information concerning Horton's conduct in other states is not relevant to the claims in this case. Thus, the request is overly expansive, and production of the information would be costly to acquire and provide. *See, e.g.,* Affidavits of Melissa Ipiotis and Vicki Lyn Jones [Doc. Nos. 63 and 64].

In State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 420 (2003), the United States Supreme Court noted that a defendant's conduct in other states was not relevant for purposes of

determining punitive damages in the forum state.  Similarly, here, Horton's alleged conduct in other states is not relevant to the issue of whether Doucett was terminated because of her pregnancy in New Mexico, or, instead, as part of a general reduction in force.  While information on Horton's conduct in the State of New Mexico is indeed relevant to the parties' claims and defenses, it appears that such information has already been provided to Doucett.

The Court is convinced that compliance with this discovery request would be prohibitively expensive and time consuming, and that the minimal benefit in obtaining information about other operations does not outweigh the burdens, expenses and delays that would be experienced by Horton.  Thus, in striking an appropriate balance between Doucett's needs and the burdens on Horton, and noting that Horton already provided information relating to Doucett's separation from employment, the Court sustains Horton's objection to Request for Production No. 13.

To be clear, however, the Court will require Horton, if it did not already done so, to produce all documents, e-mails, and correspondence relating to Doucett's request for leave, information about her pregnancy and any non-privileged document relating to her termination.  Horton states it "has already produced all non-privileged documents responsive to this request and it has also produced a privilege log with regard to privileged documents up until the time the lawsuit was filed. There is nothing further to produce with respect to this aspect of the request."

Request for Production No. 13 also seeks all documents, including but not limited to all e-mails, notes, correspondence and memos, which refer, reflect or relate to the termination of pregnant employees, or to employees who elected to exercise their right to leave under the FMLA and were terminated.

Horton convincingly argues that due to the downturn in credit and housing markets, its workforce of 10,000 employees has shrunk to 2,800.  Horton notes that Doucett's request is not

limited to the State of New Mexico, but again seeks information from 28 different states.  Indeed,

the only limitation is temporal, from 2005 to the present.  Horton argues:

> [A]s written, Request for Production No. 13 includes employees
> terminated at a point in time which was after they requested FMLA
> leave but before they ever took such leave, employees who were
> terminated while on leave, and employees who took such leave and
> them sometime thereafter (no time limitation, perhaps even several
> years later) were terminated.  It also does not limit to reason for
> termination to layoff, so would include employees terminated for all
> reasons, including not just layoff but termination for cause, voluntary
> termination or even retirement.

[Doc. 62, p. 9.]

In its May 27th letter, Horton proposed limiting the request to the New Mexico division, but

Doucett did not respond to that offer.  As additional support for the burden that would be imposed

for having to respond to this request, Horton notes that there are over 1800 employees nationally

who took FMLA leave from 2006 to present, including employees from the New Mexico division

and 27 other divisions in the United States.  There is no computerized listing for employees who

took FMLA in 2005. [Doc. 62, p. 10.]  Thus, it would require a manual search for perhaps as many

as 500 other FMLA leaves nationally.  In a supporting affidavit, Horton estimates that over 1000

hours would be required to conduct this search, which is the equivalent of one employee working

forty hours a week for 25 weeks. [Id.]

As stated above, the Court determines that Doucett's request is not reasonable and any

marginal benefit that may be accrued in obtaining the nation-wide information is offset by the

tremendous burden and cost imposed on Horton.  The Court will sustain in major part Horton's

objections, but will require Horton to produce any and all information it earlier offered to provide.

Thus, to the extent that it has not already done so, Horton should supply Doucett with the

information regarding the termination of all pregnant employees and all employees who elected to

exercise their right to leave under FMLA in the New Mexico division, from 2005 until the date of Plaintiff's termination.

**Request for Production No. 15**

In Request for Production No. 15, Doucett sought:

> All documents which reflect guidelines, instructions, talking points and the like, provided to or used by D.R. Horton, Inc. managers in connection with the meetings in which employees were terminated in June or September 2007.

Horton objected, again contending that the information is not limited to New Mexico and instead includes 28 different states and all of Horton's divisions. It further states that it has searched its records regarding memos from the New Mexico division to department managers and that there were no documents responsive to this request.

As with the earlier request, the Court concludes that Horton's conduct in other states is not relevant to Doucett's lawsuit. Any minimal benefit that would accrue to Doucett in obtaining a multi-year history of what occurred in 28 other states is significantly outweighed by the costs, expense and delay that would be imposed on Horton. Thus, the request is not proportional to the benefits sought to be obtained, and under the Court's obligation to balance the right of a party to obtain information as opposed to the burden on the opposing party in producing the information, the balance tips in favor of non-production. *See* Rule 26, <u>Koch</u>, 203 F.3d at 1238; <u>Burka</u>, 87 F.3d at 517. The Court will require Horton to produce any documents responsive to Request No. 15 that were used in the District of New Mexico. To the extent that Horton may not have produced documents responsive to this request, limited to the State of New Mexico, it is ordered to do so. If, however, it has searched its records and no documents are responsive, then Horton has no further obligation.

**Payment of Fees**

Doucett asks for an Order requiring Horton to pay for all time spent in deposition by Plaintiff's two experts: Lisa Johnson and Donna Bruzesse.  Both charge $100.00 an hour for their time and Doucett argues they were paid only witness fees, not expert fees.

Horton responds that these two witnesses are designated as fact witnesses, not as retained experts.  Horton disputes Doucett's contention that Bruzesse was only paid $105.00 and states affirmatively that it paid her two separate fees totaling $210.00.  Horton further argues that a court award of expert fees "would result in precedent that any professional person who is a fact witness and rendered any professional opinion during the course of being a fact witness should be paid for their time.  This is not the law." [Doc. 62, p. 17.]

In Wright and Miller's 8 Federal Practice and Procedure § 2034, the authors write:

> [I]t is unfair to allow one party for free what the other party has paid for.  But that unfairness can be remedied in an appropriate case, by requiring the party seeking discovery to share the cost.

Indeed, in Fed. R. Civ. P. 26(b)(4)(C), a fair allocation of expert expenses between the retaining party and the one seeking discovery is authorized.  In effect, the rule provides that if a deposition is taken, "the court shall require that the party seeking discovery pay the expert a reasonable fee for the time spent in responding to discovery."  The Advisory Committee Notes offer reassurance that "[c]oncerns regarding the expense of such depositions should be mitigated by the fact that the expert's fees for the deposition will ordinarily be born by the party taking the deposition."

Such is the case here.  Doucett is not claiming fees for pre-deposition preparation but only for the time spent during the deposition.  The request is reasonable.  Thus, the Court orders Horton to pay each of the deponents an hourly fee of $100.00 for each full hour of the deposition, and a

8

prorated fee for every partial hour, less any amounts already paid.  The fee will be at the witness's rate of $100.00 per hour.  The fee should be paid within 10 (ten) days after entry of this Order.

IT IS THEREFORE ORDERED that Doucett's Motion to Compel is GRANTED in part and DENIED in part, as described herein.

*Lorenzo F. Garcia*

Lorenzo F. Garcia
Chief United States Magistrate Judge